Cong Nie, F0497
Banes Horey Berman & Miller, LLC
Suite 200 & 201, Marianas Business Plaza
Saipan, MP 96950
Tel.: (670) 234-5684
Fax: (670) 234-5683
Email: dnie@pacificlawyers.law

FILED
Clerk
District Court
OCT 12 2021
for the Northern Mariana Islands
By_____*jy*._____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD JASHIM UDDIN, | CASE NO.: CV 21-00023 |
| Plaintiff, | |
| vs. | COMPLAINT |
| MD NURUL ISLAM BHUIYAN dba ISLAND PROTECTION SERVICE, | |
| Defendant. | |

COMES NOW Plaintiff Mohammad Jashim Uddin ("Uddin"), by and through counsel, and for his Complaint, states and alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over Uddin's claim under the Fair Labor Standards Act (the "FLSA") pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

2. This Court has supplemental jurisdiction over Uddin's claims under the laws of the Commonwealth of the Northern Marianas Islands ("CNMI") pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omission giving rise to Uddin's claims occurred in the CNMI.

### Parties

4. Uddin is a Bangladesh citizen currently residing in Saipan, CNMI.

5. Defendant MD Nurul Islam Bhuiyan ("Bhuiyan") is, upon information and belief, an individual holding both Bangladesh citizen and United States citizenship and residing in Saipan, CNMI who, at all times relevant, managed and operated a business called "Island Protection Service" ("IPS") that provided security guard services on Saipan.

**Factual Background**

6. From 2016 to 2020, IPS conducted its business by supplying its employees to work as security guards at various business establishments on Saipan, including without limitation, hotels, stores, and business offices.

7. At all times relevant, employees of IPS would regularly handle goods or materials that have been moved in or produced for commerce, such as cellphones as they were required to use cell phones to report their on-duty starting time and ending time and any unusual or suspicious occurrence while at work as a security guard.

8. Upon information and belief, at all times relevant, the monthly gross revenues of IPS were over $100,000.00.

9. At all times relevant, upon information and belief, IPS was covered by the FLSA because it had at least two employees who regularly handled goods or materials that have been moved in or produced for commerce during their work and had an annual dollar volume of business done of at least $500,000.00 from 2016 to 2020.

10. From June 2016 to September 2020, Uddin was employed by Bhuiyan and IPS on Saipan.

11. During this period, Uddin was assigned by Bhuiyan and IPS to work as a security guard at various premises, including without limitation, IT & E, DOCOMO, schools, stores, and other business premises.

12. The hours Uddin worked each workweek typically exceeded 40 hours per week and generally ranged from 50 to 70 hours per week.

13. Uddin was not exempt under the FLSA.

14. Uddin was employed by Bhuiyan and IPS under CW-1 visa and signed written contracts (the "Contracts") with Bhuiyan and IPS (which were submitted by Bhuiyan and IPS to the U.S. immigration authority to process and/or renew Uddin's CW-1 visa).

15. The Contracts provided that Uddin would be paid the Federal minimum wage and overtime pay at the rate of 1.5 times the Federal minimum wage.

16. However, Bhuiyan and IPS did not pay Uddin in accordance with those contracts or the FLSA.

17. Bhuiyan and IPS initially paid Uddin only the rate of $3.75 per hour for both regular hours and overtime and gradually increased this rate over time, and eventually to $5.00 per hour in 2019 and 2020—always below the applicable Federal minimum wage and always without the required 1.5 multiplier for overtime hours.

18. Starting around 2019, Bhuiyan required Uddin to sign Uddin's name on timesheets that did not include Uddin's overtime hours, while still having Uddin to report his actual hours to Bhuiyan so that Bhuiyan could calculate wages by applying the below-minimum rates stated above to the total actual hours.

19. The pay Uddin received during his period of employment with Bhuiyan and IPS totals approximately $68,185.00.

20. Had Uddin been properly paid the applicable Federal minimum wage and overtime pay, he would have received approximately $127,000.00 in wages.

21. Therefore, Bhuiyan and IPS owed and still owe Uddin unpaid wages in the

3

amount of over $58,000.00.

22. To date, Bhuiyan and IPS still have not fully paid Uddin.

23. Upon information and belief, Bhuiyan hired Uddin as part of Bhuiyan's long-standing scheme of exploiting numerous Bangladeshis, including Uddin, through illegal recruitment fees and financial bondage, by: (1) promising them a job on Saipan and demanding them to pay an exorbitant recruitment fees in exchange for hiring them under the CW-1 visa; (2) once they were on Saipan, sending them out to work as security guards for various businesses and under-paying them in order to make profits for himself; and (3) whenever the employees' CW-1 visas were up for renewal, demanding them to pay fee in exchange for continuing to employ them and renewing their CW-1 visas, knowing full well that the employees would have no real choice other than to given in to his demands because the payment of exorbitant recruitment fees would have already left them in a difficult financial situation, often with huge debts to pay.

24. Uddin was one of the many victims of Bhuiyan's scheme.

25. Uddin was required by Bhuiyan to pay around $11,000.00 in exchange for hiring him and Uddin did pay this amount of money to Bhuiyan, leaving Uddin in a difficult financial situation where he had no real choice but to continue to work for Bhuiyan.

26. During this employment with Bhuiyan, Uddin was required by Bhuiyan to pay, annually, a fee in exchange for continuing to employ him and renewing his CW-1 visas, and in total, Uddin paid around $1,700.00 to Bhuiyan for those continued employment fees.

**First Cause of Action**

**Violation of the FLSA**

27. Uddin re-alleges and incorporates all the above paragraphs as if restated in full

4

here.

28. At all times relevant, upon information and belief, Bhuiyan and IPS were covered by the FLSA under enterprise coverage.

29. At all times relevant, Bhuiyan and IPS qualified as an "employer" of Uddin under the FLSA.

30. Bhuiyan and IPS violated the FLSA by not paying Uddin the minimum wage or the overtime pay required by the FLSA.

31. Bhuiyan and IPS's violation of the FLSA was willful.

32. As a result of such violation of the FLSA, Uddin suffered damages, including without limitation, unpaid wages in the amount of over $58,000.00.

33. Under the FLSA, Uddin is entitled to recover liquidated damages in an amount equal to his actual damages, as well as attorneys' fees and costs.

**Second Cause of Action**

**Violation of the CNMI Minimum Wage and Hour Act (the "MWHA")**

34. Uddin re-alleges and incorporates all the above paragraphs as if restated in full here.

35. At all times relevant, Bhuiyan and Uddin were covered by the MWHA.

36. At all times relevant, Bhuiyan and IPS qualified as an "employer" of Uddin under the MWHA.

37. Like the FLSA, the MWHA also required employers to pay non-exempt employees overtime pay at the rate of 1.5 times their regular rate.

38. Bhuiyan and IPS violated the MWHA by not paying Uddin at a rate for his overtime hours that is lower than that required by the MWHA.

39. Bhuiyan and IPS's violation of the MWHA was willful.

40. As a result of such violation of the MWHA, Uddin suffered damages.

### Third Cause of Action

### Breach of Contract

41. Uddin re-alleges and incorporates all the above paragraphs as if restated in full here.

42. The Contracts are valid and enforceable contracts between Uddin and Bhuiyan.

43. All conditions precedent to Uddin receiving wages at the rates provided in this Contracts had been met or otherwise waived.

44. Bhuiyan breached the Contracts by paying Uddin at a rate lower than those provided in the Contracts.

45. As a direct and proximate result of Bhuiyan's breach, Uddin suffered damages, including without limitation, unpaid wages in the amount of over $58,000.00.

### Fourth Cause of Action

### Unjust Enrichment

46. Uddin re-alleges and incorporates all the above paragraphs as if restated in full here.

47. Bhuiyan received benefits from the recruitment fees and the continued employment fees paid by Uddin, and from the continuous employment of Uddin from which Bhuiyan was able to make profits by under-paying Uddin.

48. Bhuiyan received those benefits to the detriment of Uddin.

49. Under the circumstances, it would be unjust for Bhuiyan to retain those benefits without compensating Uddin.

50. Therefore, Uddin is entitled to appropriate and just compensation.

## PRAYER FOR RELIEF

WHEREFORE, Uddin prays for relief as follows:

a. Compensatory damages in an amount to be proven at trial;

b. Liquidated damages under the FLSA and the MWHA;

c. Costs of suit (including reasonable attorney's fees, if any); and

d. Such other and equitable relief as this Court deems just and proper.

Date: July 21, 2021.

Banes Horey Berman & Miller, LLC
*Attorneys for Plaintiff*

By: _____/s/_____
Cong Nie, F0497